266 F.3d 979 (9th Cir. 2001)
 LATRELL F. SPREWELL, Plaintiff-Appellant,
v.
GOLDEN STATE WARRIORS; NATIONAL BASKETBALL ASSOCIATION, Defendants-Appellees.
LATRELL F. SPREWELL, Plaintiff,
and
ROBERT THOMPSON, JR.; GORDON J. ROSE; STEPHEN G. WEIZENECKER; THOMPSON & ASSOCIATES; ROBERT A. GIST; PAUL F. UTRECHT; GIST, KENNEDY & ASSOCIATES,
Appellants,
v.
GOLDEN STATE WARRIORS; NATIONAL BASKETBALL ASSOCIATION, Defendants-Appellees.
 Nos. 99-15602, 99-17186
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 4, 2000
Filed September 14, 2001
Corrected December 28, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted]
 Paul F. Utrecht, Law Offices of Paul F. Utrecht, San Francisco, California, for plaintiff-appellant Sprewell.
 Richard R. Dale, Law Offices of Richard R. Dale, Mill Valley, California for plaintiffs-appellants Thompson, et al.
 Jeffrey A. Mishkin (Argued), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for the defendant-appellees.
 Frank Rothman (On the Briefs) and Marie L. Hurabiell (On the Briefs), Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, for defendant National Basketball Association.
 Martin P. Moroski (On the Briefs), Sinsheimer, Schiebelhut & Baggett, San Luis Obispo, California, for the defendants-appellees.
 Appeals from the United States District Court for the Northern District of California, Vaughn R. Walker, District Judge, Presiding, D.C. No. CV-98-02053-VRW, D.C. No. CV-98-02053-VRW
 Before: Dorothy W. Nelson, David R. Thompson, and Stephen S. Trott, Circuit Judges.
 ORDER
 TROTT, Circuit Judge:
 
 
 1
 The Opinion filed on November 7, 2000, and reported at 231 F.3d 520 (9th Cir. 2000), is withdrawn.
 
 
 2
 The panel as constituted above has voted to grant the petition for rehearing without further oral argument and to issue a new opinion. With this decision and action, the previous opinion filed November 7, 2000, becomes inoperative, and the pending petition for rehearing en banc becomes moot. The parties, should they so choose, are at liberty to file new petitions with respect to the new opinion.
 
 
 3
 So ORDERED.
 
 OPINION
 
 4
 Latrell F. Sprewell ("Sprewell") challenges the district court's dismissal of his claims against the National Basketball Association ("NBA") and the Golden State Warriors ("the Warriors") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Fed. R. Civ. P. 12(b)(6)"). Sprewell's attorneys dispute the district court's imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). Sprewell raises numerous state and federal claims challenging the validity of the punishments meted out by the NBA and the Warriors in response to Sprewell's physical attack on the head coach of the Warriors in 1997. The district court dismissed Sprewell's federal claims as frivolous, and found Sprewell's state claims to be preempted by section 301 of the Labor Management Relations Act ("section 301"). We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291. We AFFIRM in part, REVERSE in part, and REMAND.
 
 
 5
 * BACKGROUND
 
 
 6
 Sprewell joined the NBA in 1992 as a guard for the Golden State Warriors. During Sprewell's tenure with the Warriors, he played under four different head coaches, the last of whom was P.J. Carlesimo. Sprewell's star-crossed relationship with Carlesimo, while amicable upon its inception in June of 1997, 13296.quickly deteriorated over the ensuing six months to the point that both Sprewell and the Warriors openly entertained the possibility of trading Sprewell to another team.
 
 
 7
 Tensions between Sprewell and Carlesimo climaxed during a closed-door practice on December 1, 1997, during which Carlesimo told Sprewell to pass the ball to a teammate for a quick shot. Despite Sprewell's contention that he passed the ball "admirably, as one would expect of an All-Star," Carlesimo rebuked Sprewell for not putting more speed on his pass. When Carlesimo subsequently repeated his criticism, Sprewell slammed the ball down and directed several expletives at Carlesimo. Carlesimo responded with a similar showing of sophistication. Sprewell immediately either walked or lunged at Carlesimo and wrapped his hands around Carlesimo's neck. With his arms fully extended, Sprewell moved Carlesimo backwards, saying "I will kill you." Carlesimo offered no resistence. Sprewell grasped Carlesimo's neck for approximately seven to ten seconds -- the time it took for other players and coaches to restrain Sprewell. Sprewell then left the practice floor, saying "trade me, get me out of here, I will kill you," to which Carlesimo countered, "I am here."
 
 
 8
 After showering and changing, Sprewell returned to the practice facility to again confront Carlesimo. Despite the efforts of two assistant coaches to restrain him, Sprewell was able to approach Carlesimo and throw an overhand punch that grazed Carlesimo's right cheek. Sprewell landed a subsequent blow to Carlesimo's shoulder, but it is uncertain whether it was intentional or the product of Sprewell's attempt to free himself from those restraining him. As Sprewell left the facility, he again told Carlesimo, "I will kill you."
 
 
 9
 That evening the Warriors suspended Sprewell for a minimum of ten games and expressly reserved its right to terminate Sprewell's contract. Two days later, the Warriors exercised that right and ended Sprewell's reign as a Warrior. The NBA subsequently issued its own one-year suspension of Sprewell after conducting an independent investigation of the matter.
 
 
 10
 On December 4, 1997, Sprewell invoked the arbitration provisions of his collective bargaining agreement ("CBA") by filing a grievance challenging both his suspension by the NBA and the Warriors' termination of his contract. The arbitrator held nine days of hearings, received testimony from twenty-one witnesses, accepted over fifty exhibits, and was presented with over 300 pages of pre- and post-hearing briefs. The arbitrator found that the dual punishments issued by the NBA and the Warriors were permissible under the CBA, but found that: (1) the Warriors' termination of Sprewell's contract was not supported by just cause because after the Warriors' initial suspension of Sprewell, any residual interest of the Warriors was absorbed by the NBA's investigation of the matter; and (2) the NBA's suspension should be limited to the 1997-98 season.
 
 
 11
 On May 20, 1998, Sprewell filed the instant suit. The district court dismissed Sprewell's complaint without prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and instructed Sprewell's counsel to sign any subsequently filed amended complaint in accordance with Rule 11. Failing to heed the admonitions of the district court, Sprewell filed an amended complaint that paralleled the original. The district court found the amended complaint to consist of "the same baseless claims previously dismissed by the court" and ordered Sprewell's attorneys to pay the NBA's and the Warriors' attorneys' fees pursuant to Rule 11. Sprewell asks that we reverse the ruling of the district court.
 
 II
 ANALYSIS
 
 12
 In his complaint, Sprewell leveled a multitude of claims against the NBA and the Warriors, including: (1) a request for 13298.vacatur of the arbitrator's opinion pursuant to section 301 of the Labor Management Relations Act; (2) intentional interference with freedom to make and enforce contracts pursuant to 42 U.S.C. § 1981; (3) conspiracy to violate freedom to make and enforce contracts pursuant to 42 U.S.C. § 1985(3); (4) conspiracy to interfere with the arbitral process by producing false evidence; (5) violation of common law right to fair procedure; (6) interference with prospective economic advantage; (7) interference with contractual relations; (8) violation of California's Unruh Act; (9) civil conspiracy; and (10) unfair business practices pursuant to California Business and Professional Code §§ 17200 and 17500. The NBA and the Warriors maintain that their actions were justified under the CBA and that Sprewell's state law claims fall within the preemptive penumbra of section 301.
 
 A. Count 1: Vacating the Arbitration Award
 
 13
 Sprewell seeks to vacate the arbitration award pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 et seq. ("section 301"). Section 301 empowers this court to review an arbitration conducted under the terms of a collective bargaining agreement. See United Steelworkers of Am. v. Enterprise Wheel & Car Co., 363 U.S. 593 (1960).
 
 
 14
 Judicial scrutiny of an arbitrator's decision in a labor dispute "is extremely limited." Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mechanical & Stainless, Inc., 863 F.2d 647, 653 (9th Cir. 1988). The Supreme Court has instructed that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. " United Paper-workers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). We have followed suit in holding that "so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him, because their interpretation of the contract is different than his." San Francisco-Oakland Newspaper Guild v. Tribune Pub. Co., 407 F.2d 1327, 1327 (9th Cir. 1969) (per curiam).
 
 
 15
 Notwithstanding the foregoing, we have identified four instances in which the vacatur of an arbitration award under section 301 is warranted: (1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud. See SFIC Properties, Inc. v. International Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, 103 F.3d 923, 925 (9th Cir. 1996) (internal quotations omitted); Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1134 (9th Cir. 2000). Sprewell seeks refuge under each of the four exceptions.
 
 
 16
 1. The Arbitration Award Draws its Essence from the
 
 CBA
 
 17
 Sprewell contends that the arbitrator's approval of Sprewell's "multiple punishments" -- the disciplinary actions taken by both the NBA and the Warriors in response to Sprewell's misconduct -- did not draw its essence from the CBA. The thrust of Sprewell's argument is that the arbitrator improperly ascribed a conjunctive meaning to the word "or" in the CBA provision that subjects players "to disciplinary action for just cause by his Team or by the Commissioner." Sprewell alleges that by failing to read the word"or" in the disjunctive, the arbitrator not only discarded the"plain and unambiguous" language of the CBA, but actually rewrote it. Sprewell additionally argues that the arbitrator's award does not draw its essence from the CBA because "the Arbitrator relied upon the [National Football League's] collective bargaining agreement, which uses different language, i.e., the word `and' instead of `or.' " Sprewell's claims are legally untenable.
 
 
 18
 We have held that an arbitration award will only be set aside for failing to draw its essence from the contract in "those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract." Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, 886 F.2d 1200, 1205-06 n.6 (9th Cir. 1989). This is not such a case. In the arbitration award, the arbitrator explained in detail the logic underlying his conclusion, including why he read the word "or" in the conjunctive rather than the disjunctive. Specifically, the arbitrator found that: (1) the CBA provision upon which Sprewell relies was not intended to deal with the issue of multiple disciplines, but rather was designed to emphasize "the imperative of just cause in reviewing the matters of discipline" -- thus illustrating that the word "or" was likely chosen without careful consideration of its implications; (2) the CBA does not include the word "either," which would have supported the conclusion that the penalties were intended to be mutually exclusive; and (3) as demonstrated by the NFL's CBA, "[h]ad the parties here intended by contract to limit discipline with respect to the same matter to a team or the Commissioner, but not both, one would have expected some expression in the CBA as to which has primacy." Regardless of whether we would reach the same conclusion advanced by the arbitrator, we must defer to the arbitrator's decision on the grounds that he was, at the very least, "arguably construing or applying the contract." Misco, 484 U.S. at 38.
 
 
 19
 2. The Arbitrator Did Not Exceed the Scope of his Authority
 
 
 20
 Sprewell argues that the arbitrator "exceeded the scope of his authority" because he was required either to uphold or to reject the suspension in its entirety. Sprewell does not, however, attempt to cite language -- nor is there any -- in the CBA supporting this conclusion. The Supreme Court has held that an arbitrator should be given substantial latitude in fashioning a remedy under a CBA. See Enterprise Wheel, 363 U.S. at 596-97. Sprewell has failed to demonstrate why the above rule should not be applied with full vigor in the instant 13301.case. Accordingly, we reject Sprewell's contention that the arbitrator exceeded the scope of his authority by fashioning an originative remedy.
 
 
 21
 3. The Award Does Not Run Counter to Public Policy
 
 
 22
 Sprewell alleges that the arbitration award should be vacated on the ground that it contravenes California's public policy against race-discrimination. The crux of Sprewell's argument is that by upholding the dual punishments issued by the NBA and the Warriors, the arbitrator simultaneously spread the virus of racial animus plaguing those penalties. "To vacate an arbitration award on public policy grounds, we must (1) find that `an explicit, well defined and dominant policy' exists here and (2) that `the policy is one that specifically militates against the relief ordered by the arbitrator.' " United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms, 74 F.3d 169, 174 (9th Cir. 1995) (citation omitted). The latter element is dispositive of Sprewell's claim. The arbitrator held that Sprewell's punishments were wholly justified by the language of the CBA and by virtue of the uniquely egregious nature of Sprewell's misconduct. Therefore, Sprewell has failed to demonstrate that the public policy of California militates against the enforcement of the arbitration award.
 
 
 23
 4. The Arbitration Award Was Not Procured by Fraud
 
 
 24
 Finally, Sprewell claims that the NBA and the Warriors tainted the arbitral process by introducing false statements and doctored pictures of Carlesimo's injuries, thus requiring that the award be vacated on account of fraud. This claim can be summarily dismissed under the rule that "where the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple." A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403 (9th Cir. 13302.1992). Sprewell's fraud claim was presented in its entirely to, and ruled upon by, the arbitrator. Thus, we do not find it necessary to revisit this issue.
 
 
 25
 B. Sprewell Fails to Plead Facts Sufficient to Sustain His Federal Claims for Racial Discrimination
 
 
 26
 A dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed de novo. See Monterey Plaza Hotel, Ltd. v. Local 483, 215 F.3d 923, 926 (9th Cir. 2000). Review is limited to the contents of the complaint. See Enesco Corp. v. Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir. 1998). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See id. The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. See Mullis v. United States Bankr. Ct. , 828 F.2d 1385, 1388 (9th Cir. 1987). Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).
 
 1. Claim II: 42 U.S.C. § 1981
 
 27
 Section 1981 provides, "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. " Sprewell contends that he has adequately pleaded that his punishments by the NBA and the Warriors were the product of his race in violation of 42 U.S.C. § 1981. In his complaint he alleged that black NBA players (1) are punished more frequently and severely than white players, and (2) have less favorable termination and compensation clauses in their player contracts. However, the pleading problem in this case arises not from the substance of his averments, but from the rest of his complaint.
 
 
 28
 In dismissing Sprewell's section 1981 claim, the district court noted that the arbitration award was attached to Sprewell's complaint and that it contained extensive factual allegations that fatally undermined Sprewell's section 1981 claim. Our examination of the pleadings confirms that Sprewell's attachment of the arbitration award to his complaint justified both the district court's consideration in connection with a Rule 12(b)(6) motion of the factual findings contained therein as well as the conclusion the court drew from it. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions . . . may be considered in ruling on a Rule 12(b)(6) motion to dismiss."). We have held that a plaintiff can -- as Sprewell has done here -- plead himself out of a claim by including unnecessary details contrary to his claims. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); cf. Soo Line R.R. v. St. Louis Southwestern Ry., Co ., 125 F.3d 481, 483 (7th Cir. 1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.").
 
 
 29
 The arbitration award annexed to Sprewell's complaint contains the arbitrator's findings that Sprewell's punishment was justified by virtue of both the "singularity of his misconduct" and the fact that Sprewell attacked his head coach, which the arbitrator found to strike "at the very core of a structure that provides stability for a team and an organized sport." The uncontested facts set forth in the arbitration award effectively and persuasively rebut the conclusory allegations made by Sprewell, that the actions taken by the NBA and the Warriors were the product of America's "fear of the black man's physicality and rage, and the fear and resentment of the black man's success, along with the corresponding anger that the black man is not grateful for what he has been `given.' "
 
 
 30
 Sprewell contends that the district court's reliance on the arbitration award was erroneous because the court gave "preclusive effect to the arbitration award" in violation of the Supreme Court's mandate that race discrimination claims not be foreclosed by way of a previous arbitration. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 55-60 (1974); see also, Bowers v. Campbell, 505 F.2d 1155, 1160 (9th Cir. 1974). Sprewell's reliance on Alexander and its progeny is misplaced. Because the attachments to Sprewell's complaint prove fatal to his claims, we affirm the district court's disposition of Sprewell's section 1981 cause of action.
 
 2. Count III: 42 U.S.C. § 1985(3)
 
 31
 Count III of Sprewell's amended complaint fails to state a claim for racial discrimination under section 1985(3). We have held that "[a]n indispensable element of a claim under 42 U.S.C. § 1985(3) is some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action . . . ." Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) (internal quotations omitted). As explained above, Sprewell pleaded himself out of court by attaching the arbitration award to his complaint. The district court therefore properly concluded that Sprewell failed to adequately plead a claim under section 1985(3).
 
 C. State Law Claims
 
 32
 Sprewell asserts several state law claims against the NBA and the Warriors, including: (1) violation of California's Unruh Act; (2) violation of his common law right to fair procedure; (3) intentional interference with contract and business relations; (4) civil conspiracy; and (5) violation of California's Unfair Practices Act. We address each claim in turn below.
 
 1. Unruh Act
 
 33
 The district court properly concluded that Sprewell's claim under the Unruh Act is meritless. In general terms, the Unruh Act provides that "all persons are entitled to free and equal accommodations, privileges, facilities and services in all business establishments. It secures equal access to public accommodations and prohibits discrimination by business establishments." Black v. Dep't of Mental Health, 100 Cal. Rptr. 2d 39, 43 (Cal. Ct. App. 2000). The Unruh Act, however, "has no application to employment discrimination." Rojo v. Kliger, 801 P.2d 373, 380 (Cal. 1990). Sprewell's punishments stemmed from his employment relationships with the NBA and the Warriors. Sprewell therefore has failed to plead facts sufficient to invoke the protections afforded by California's Unruh Act.
 
 2. Common law right to fair procedure
 
 34
 Sprewell contends that the NBA and the Warriors violated his common law right to fair procedure by failing to give him adequate notice that they were "considering the imposition of discipline before he was disciplined and he was not given an opportunity to be heard about the appropriateness of discipline." The arbitration award attached to Sprewell's complaint conclusively demonstrates that the NBA's investigation "complied with industrial due process" and that Sprewell received a full and fair hearing. Because "we are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, " Steckman, 143 F.3d at 1295-96, we reject Sprewell's fair procedure claim.
 
 
 35
 3. Intentional Interference with Contract and Business Relations
 
 
 36
 Sprewell alleges that the NBA and the Warriors intentionally interfered with his contractual and business relationships with third parties. To prevail on these claims, Sprewell states he must prove that the NBA and the Warriors engaged in wrongful conduct designed to interfere or disrupt an economic relationship between himself and a third party. The"wrongful conduct" alleged by Sprewell to have interfered with his economic relationships was the NBA's and the Warriors' instigation of a negative and false media campaign "intended to vilify Mr. Sprewell and prevent him from making and enforcing contracts with others because of his race." The district court concluded that it could not determine whether the media communications of the NBA and the Warriors were"wrongful" without interpreting the CBA, and therefore dismissed Sprewell's interference claims as being preempted by section 301. Sprewell challenges this conclusion by the district court.
 
 
 37
 We begin our analysis by reviewing the section 301 pre-emption doctrine. The Supreme Court has held that federal law exclusively governs suits for breach of a CBA, while concomitantly preempting state law claims predicated on such agreements. See Allis-Chambers Corp. v. Lueck , 471 U.S. 202, 210 (1985). The Court has expanded the preemptive reach of section 301 beyond contract claims, holding that section 301 "also preempts tort claims which, `as applied, would frustrate the federal labor-contract scheme established in § 301.' " Bale v. Gen'l Tel. Co. of California, 795 F.2d 775, 779 (9th Cir. 1986) (quoting Allis-Chambers, 471 U.S. at 209). A state law claim is preempted by section 301 when it is "substantially dependent" on analysis of a CBA. Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987) (internal quotations omitted); see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409-10 (1988). Stated alternatively, "[i]f the plaintiff's claim cannot be resolved without interpreting the applicable CBA . . . it is preempted." Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 691 (9th Cir.2001); amended August 27, 2001) (en banc). "[T]he bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation, " however, does not require that the state-claim be extinguished. See Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). Nor is a state-law claim preempted merely because the defendant has raised a defense based on the terms of a CBA. See Cramer, 255 F.3d at 688-89.
 
 
 38
 The NBA and the Warriors argue that Sprewell's interference claims are "substantially dependent" on analysis of the CBA, and therefore were properly dismissed by the district court pursuant to section 301. The NBA and the Warriors premise this argument on the assumption that the district court could not have determined whether the NBA's and the Warriors' media communications about Sprewell constituted "wrongful conduct" without first ascertaining whether such communications were prohibited by the CBA. As stated by the district court:
 
 
 39
 [Sprewell's] interference claims are predicated upon the alleged impropriety of his suspension and contract termination and defendants' alleged conduct in connection therewith. These subjects are within the scope of the CBA's grievance and arbitration provisions. In order to adjudicate these claims, the court would be required to determine what types of media communications are authorized in connection with the prosecution of an arbitration and the administration of player discipline. Defendants' statements with respect to plaintiff's discipline are central rather than tangential to the rights and procedures provided under the [CBA].
 
 
 40
 The NBA and the Warriors, like the district court, labor under the mistaken assumption that their statements to the media can only be deemed "wrongful" for purposes of Sprewell's interference claims if such communications are prohibited by the CBA. This premise is belied by California law. The phrase "wrongful conduct" has been defined by California courts as encompassing "unethical business practices" such as defamation. See PMC, Inc. v. Saban Entm't, Inc., 52 Cal. Rptr. 2d 877, 891 (Cal. Ct. App. 1996) ("Defendant's liability may arise from improper motives or from the use of improper means. [The defendant's actions] may be wrongful by reason of a statute or other regulation, or a recognized rule of common law or perhaps an established standard of a trade or profession. Commonly included among improper means are actions which are independently actionable, violations of federal or state law or unethical business practices, e.g., . . . misrepresentation, . . . defamation . . . ." (internal quotations omitted)). The conduct of the NBA and the Warriors alleged by Sprewell to have interfered with his economic relationships -- i.e., the instigation of a media campaign designed to portray Sprewell "in a false and negative light " -- clearly falls within this definition. Accordingly, the alleged actions of the NBA and the Warriors, if proven true, would qualify as "wrongful conduct" under California law independent of the rights and responsibilities set forth in the CBA.
 
 
 41
 Therefore, to the extent Sprewell's interference claims are based upon alleged violations of the CBA, the district court properly dismissed those claims. That is, any allegation by Sprewell that the NBA's and the Warriors' alleged media communications were "wrongful" because they violated the CBA would necessarily require an interpretation of that agreement, and thus would be preempted by section 301. Insofar as Sprewell's interference claims are predicated on the NBA's and the Warriors' alleged violations of California law, however, those claims can "be litigated without reference to the rights and duties established in a CBA," and therefore are not preempted by section 301. Cramer, 255 F.3d at 691.
 
 
 42
 Any attempt by the NBA and the Warriors to pull Sprewell's interference claims into the preemptive scope of section 301 by mounting a defense in reliance on the CBA would be fruitless. This conclusion is compelled by our recent en banc opinion in Cramer, in which we held that "[t]he plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense." Id. (emphasis added). This conclusion would hold true even if the NBA and the Warriors were to allege that Sprewell's union bargained away his state law right to contest the veracity of the NBA's and the Warriors' statements to the media. We have previously held that "[w]here a party defends a state cause of action on the ground that the plaintiff's union has bargained away the state law right at issue, the CBA must include clear and unmistakable language waiving the covered employees' state right for a court even to consider whether it could be given effect." Id.at 692 (internal quotations omitted). The NBA and the Warriors have failed to cite any language, let alone "clear and unmistakable language," in the CBA waiving Sprewell's state law right to assert intentional interference claims against the NBA and the Warriors.
 
 
 43
 Finally, Sprewell has not pled himself out of his intentional interference claims by attaching the arbitration award to his complaint. The arbitration award does not address in any way the media communications engaged in by the NBA and the Warriors following Sprewell's suspension, and therefore does not contradict the allegations of intentional interference pled in Sprewell's complaint.
 
 
 44
 We conclude that to the extent Sprewell's claims of intentional interference are premised on the NBA's and the Warriors' alleged violations of California state law, the district court erred in dismissing those claims.
 
 
 45
 4. Unfair Practices Act and Civil Conspiracy
 
 
 46
 To state a claim under the Unfair Practices Act, Sprewell must demonstrate that the NBA and the Warriors engaged in a business practice that was unlawful or unfair. See CAL. BUS. & PROF. CODE §§ 17200 et. seq. (West 2000); Klein v. Earth Elements, Inc., 131 Cal. Rptr. 172, 178 (Cal. Ct. App. 1997). Similarly, to sustain a claim of civil conspiracy, Sprewell must prove that the NBA and the Warriors have committed an underlying tort. See Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 454, 457 (Cal. 1994) (holding that conspiracy is not a legal cause of action independent of underlying tort). The alleged unlawful acts of the NBA and the Warriors cited by Sprewell in support of his claims for unfair business practices and civil conspiracy include, inter alia, intentional interference with contract and business relations.
 
 
 47
 The district court concluded that Sprewell's unfair business practices claims were preempted by section 301, stating that each allegation requires an interpretation of the disciplinary provisions of the CBA. As noted above, however, Sprewell's intentional interference claims do not necessarily require an interpretation of the CBA. Therefore, Sprewell's claim under California's Unfair Practices Act is not preempted to the extent it is premised on the NBA's and the Warriors' instigation of a media campaign designed to portray Sprewell "in a false and negative light."
 
 
 48
 The district court dismissed Sprewell's civil conspiracy claim after concluding that Sprewell had failed to successfully allege any underlying tort committed by the NBA and the Warriors. Because we conclude that Sprewell's intentional interference claims survive the NBA's and the Warrior's motions to dismiss, we reverse the district court's dismissal of Sprewell's claim for civil conspiracy.
 
 D. Sanctions
 
 49
 We remand the issue of sanctions to the district court for further consideration in light of this opinion.
 
 III
 CONCLUSION
 
 50
 For the foregoing reasons, we AFFIRM the district court's dismissal of Sprewell's claims alleging violations of section 301, section 1981, section 1985(3), the Unruh Act, and his common law right to fair procedure. We REVERSE, however, the district court's dismissal of Sprewell's state law claims for intentional interference with contract, intentional interference with business relations, civil conspiracy, and unfair business practices, and REMAND this case for further proceedings. The parties shall bear their own costs on appeal