**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALLISON BASS and THOMAS SCOTT
PARKS,
             *Plaintiffs-Appellants,*

v.

THE COUNTY OF BUTTE; SCOTT
MACKENZIE, Sheriff; BUTTE COUNTY
SHERIFF'S OFFICE; WILLIAM
ANDERSON, Lieutenant,
             *Defendants-Appellees.*

No. 04-16705

D.C. Nos.
CV-02-02443-DFL
CV-02-02444-DFL

Appeal from the United States District Court
for the Eastern District of California
David F. Levi, District Judge, Presiding

JOHN MULDOWN,
             *Plaintiff-Appellant,*

v.

THE COUNTY OF BUTTE; SCOTT
MACKENZIE, Sheriff; BUTTE COUNTY
SHERIFF'S OFFICE; WILLIAM
ANDERSON, Lieutenant,
             *Defendants-Appellees.*

No. 04-17286

D.C. No.
CV-02-02445-
LKK/CMK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
June 15, 2006—San Francisco, California

9697

Filed August 15, 2006

Before: Mary M. Schroeder, Chief Judge, Susan P. Graber,
Circuit Judge, and Kevin Thomas Duffy,*
Senior District Judge.

Opinion by Judge Graber

---

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

## COUNSEL

Lynn Hubbard III and Scottlynn J. Hubbard IV, Law Offices of Lynn Hubbard, Chico, California, for the plaintiffs-appellants.

Gregory P. Einhorn, Law Office of Gregory P. Einhorn, Chico, California, for the defendants-appellees.

## OPINION

GRABER, Circuit Judge:

Plaintiffs Allison Bass, Thomas Parks, and John Muldown asserted employment discrimination claims against Defendant County of Butte and others based on Defendant's alleged failure to accommodate their work-related injuries. All three Plaintiffs raised their employment claims under California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51, and Disabled Persons Act ("DPA"), Cal. Civ. Code §§ 54, 54.1, on the theory that the two state laws incorporate Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213.[1] We disagree.

This case consolidates the separate actions of three Plaintiffs against the County of Butte. Each of the three Plaintiffs suffered an on-the-job injury and sought accommodation from the County for his or her resulting physical impairment. Plaintiffs claim that the County failed to offer them reasonable accommodations.

In 2002, Plaintiffs filed separate complaints, each seeking monetary damages and declaratory relief against Butte County, Butte County Sheriff Scott Mackenzie, and Lieutenant William Anderson. Plaintiffs raised both federal and state causes of action including claims under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796*l*; the ADA; and 42 U.S.C. § 1983 and the Unruh Act, the DPA, and state law theories of negligence and breach of contract.[2] The district court granted summary judgment in favor of Defendants on all claims. Plaintiffs filed timely appeals and this court consolidated the cases. At issue here is whether the district court properly dis-

---

[1]Plaintiffs raised additional issues, which we have addressed in a separate memorandum disposition, filed this date.

[2]Plaintiffs could have, but did not, bring claims under California's Fair Employment and Housing Act.

missed Plaintiffs' employment discrimination claims brought under the Unruh Act and the DPA.

Plaintiffs argue that both laws incorporate Title I of the ADA, thereby making California's Unruh Act and DPA state law vehicles for enforcing the ADA's employment protections. The district court granted summary judgment, holding that neither state statute provides a cause of action for employment discrimination. We review de novo this interpretation of state law. *Rabkin v. Or. Health Scis. Univ.*, 350 F.3d 967, 971 (9th Cir. 2003).

**[1]** Congress enacted the ADA in 1990. The purpose of the statute is, in part, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The statute addresses this goal in three main sections: Title I prohibits public and private employers from discriminating against qualified individuals with disabilities in employment practices; Title II requires state and local governments to ensure that individuals with disabilities have access to public services, including transportation services; and Title III requires equal access to public accommodations.

At the time that the ADA was passed, California had in place various laws addressing each of these main subject areas. Three are relevant here. The California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900-12996, makes it an unlawful employment practice to discharge a person from employment, or to discriminate against a person in the terms, conditions, or privileges, of employment, because of a physical or mental disability. *Id.* § 12940(a).

**[2]** The DPA and the Unruh Act both focus on ensuring that persons with disabilities have equal access to public businesses, facilities, and other accommodations. Section 54(a) of the DPA provides:

Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places.

Section 54.1 provides in pertinent part:

(a)(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.[3]

. . . .

(b)(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

---

[3]The DPA defines "full and equal access" as "access that meets the standards of Titles II and III of the Americans with Disabilities Act of 1990." Cal. Civ. Code § 54.1(a)(3).

The Unruh Act provides in pertinent part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, mental condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).

[3] The California courts have, historically, rejected attempts by plaintiffs to expand the scope of the Unruh Act to include employment claims. In *Alcorn v. Anbro Engineering, Inc.*, 468 P.2d 216, 229 (Cal. 1970), the California Supreme Court dismissed a plaintiff's race-based employment discrimination claim, holding that "there is no indication that the Legislature intended to broaden the scope of section 51 to include discriminations other than those made by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers." The California Supreme Court bolstered its holding that the Unruh Act does not apply to employment claims by noting: "This conclusion is substantiated by the fact that at the same session wherein it adopted the language of section 51, the Legislature also enacted extensive provisions governing discrimination in employment." *Id.* The California Supreme Court reiterated the *Alcorn* holding 20 years later in *Rojo v. Kliger*, 801 P.2d 373, 380 (Cal. 1990), stating broadly that "the Unruh Civil Rights Act has no application to employment discrimination."

Plaintiffs argue that amendments to the Unruh Act and the DPA enacted in 1992 and 1996, respectively, accomplished the subject matter expansion that the California Supreme Court had rejected expressly in 1970 and 1990. Plaintiffs' argument is incompatible with the state's statutory scheme as

a whole and is unsupported by the legislative history of the amendments.

The California governor signed Assembly Bill 1077 into law in 1992 and signed Senate Bill 1687 in 1996. The stated purpose of Bill 1077 was to "conform state anti-discrimination laws with the provisions of the Americans with Disabilities Act." (Assem. Off. of Research, 3d reading analysis, A.B. 1077 (Cal. 1992 Reg. Sess.) as amended Jan. 29, 1992.) To achieve that end, the bill proposed amendments to a range of state statutes, including the Unruh Act and FEHA. Bill 1687 was much more limited in purpose, seeking primarily to clarify the state's protections for the use of assistance dogs by disabled persons. (Sen. Off. of Research, 3d reading analysis, S.B. 1687 (Cal. 1996 Sess.) as amended Apr. 25, 1996.)

[4] As amended, the Unruh Act incorporated the following statement: "A violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Cal. Civ. Code § 51(f) (citation omitted). Sections 54 and 54.1 of the DPA were amended to include materially identical provisions.[4] Plaintiffs argue that the plain meaning of the amendments requires the incorporation of the ADA *in its entirety* into the Unruh Act and the DPA. Plaintiffs' reading transforms the subject-matter scope of these statutes, drastically broadening their reach from public accommodations to employment discrimination.

[5] In interpreting a state statute, we must determine what meaning the state's highest court would give to the law. *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1027 (9th Cir. 2003). Thus, we must follow the state's rules of statutory interpretation. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 930 (9th Cir. 2004), *cert. denied*, 544 U.S. 948

---

[4]Section 54.1(d) states additionally that "nothing in this section shall be construed to limit the access of any person in violation of that act."

(2005). "As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose." *People v. Murphy*, 19 P.3d 1129, 1133 (Cal. 2001). We begin by "examining the statute's words, giving them a plain and commonsense meaning." *Id.* However, text is not to be interpreted in isolation. *Id.* Rather, we must look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision." *Id.* (internal quotation marks omitted). Here, the context of the 1992 amendment leads us to conclude that the California legislature intended to incorporate into the Unruh Act and the DPA only those provisions of the ADA germane to the original scope of those state laws. Beginning, as instructed, with the common sense meaning of the text, we conclude that the amendments merely incorporate any otherwise relevant ADA standards as a "floor" under state law. Plaintiffs' reading would, in effect, add to the text that a violation of an individual's right under *any part of* the ADA shall constitute a state-law violation as well, even if the subject matter of the alleged ADA violation is wholly outside the state-law protection at issue. The text of the amendments does not sweep so broadly. Were there any doubt about our conclusion, it would be dispelled by considering two aspects of the context and purpose of the amendments.

First, Assembly Bill 1077 was a broad-spectrum enactment that amended a number of state laws in an attempt to create conformity between the gamut of California's discrimination provisions and those of the ADA. Notably, the bill also amended FEHA, in an attempt to harmonize the state's employment discrimination protections with parallel federal mandates. A.B. 1077, 1992 Reg. Sess. (Cal. 1992). If, as Plaintiffs argue, the legislature intended to transform the Unruh Act into an all-inclusive anti-discrimination law, then its simultaneous strengthening of FEHA would have been unnecessary and anomalous.

Second, Plaintiffs' reading of the 1992 and 1996 amendments would create a significant disharmony between the

Unruh Act and the DPA, on the one hand, and FEHA , on the other. FEHA provides an administrative scheme to process claims of employment and housing discrimination. The statute creates two administrative bodies—the Department of Fair Employment and Housing, Cal. Gov't Code § 12901, and the Fair Employment and Housing Commission, *id.* § 12903—to investigate, adjudicate, and redress discrimination claims, *id.* §§ 12930, 12935. FEHA requires that an aggrieved claimant exhaust the administrative remedies provided by those bodies before filing an action in state or federal court. *Id.* §§ 12960-12976. By contrast, neither the Unruh Act nor the DPA contains a comparable administrative scheme. Therefore, Plaintiffs' attempt to expand the subject matter scope of these statutes to incorporate Title I of the ADA would create an end-run around the administrative procedures of FEHA solely for disability discrimination claimants. Nothing in the legislative history of either amendment suggests that the legislature intended to carve out such an exception by roundabout implication.

Finally, our decision today is consistent with our own precedent. Although we have not directly addressed the issue in the context of a disability discrimination claim, we have applied the rule of *Rojo* that excludes employment claims from the reach of the Unruh Act. *See Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 874-75 (9th Cir. 1996) (affirming summary judgment where the plaintiff's claim of race discrimination arose out of an employment relationship with the defendant); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (holding that the plaintiff had failed to plead facts sufficient to invoke the protections of the Unruh Act where his claims stemmed from his employment relationship with the defendant).

**[6]** Reading the 1992 and 1996 amendments to the Unruh Act and the DPA in the context of California's overall scheme of statutory protections against discrimination, and in the absence of any express indication by the state legislature that

it intended the amendments to drastically expand the subject matter of the two statutes, or to overrule *Alcorn* and *Rojo*, we hold that those amendments incorporate into the Unruh Act and the DPA only those provisions of the ADA that are germane to the statutes' original subject matter.

AFFIRMED.