**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 26 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

NINA PARKINSON, an individual,

             Plaintiff - Appellant,

   v.

ROBANDA INTERNATIONAL, INC., a
California corporation,

             Defendant - Appellee.

No. 14-55028

D.C. No. 2:13-cv-07029-R-AJW

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted February 5, 2016
Pasadena, California

Before: REINHARDT, PAEZ, and M. SMITH, Circuit Judges.

Plaintiff Nina Parkinson brought this case for trademark infringement and

unlawful competition in violation of 15 U.S.C. §§ 1114, 1125 against Defendant

Robanda International, Inc. ("Robanda").  At issue in this appeal is whether

Parkinson has adequately alleged ownership of the trademark associated with a

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

brand of hairbrushes distributed and manufactured by Robanda (the Marilyn Mark). Although Robanda does not dispute that Parkinson had been formally assigned the Marilyn Mark by the trademark's previous owner, Camelot Hair Care Products, LLC ("Camelot"), it argues that the assignment to Parkinson from Camelot was an invalid assignment in gross, and that she therefore could not allege a valid claim for ownership of the trademark. The district court agreed and dismissed Parkinson's complaint with prejudice. This appeal followed.

Trademarks are tangible representations of goodwill that cannot be separated from that goodwill.[1] *See* 3 McCarthy on Trademarks & Unfair Competition § 18:2 (4th ed. 2015). A trademark assignment that functionally severs the trademark from its accompanying goodwill is an invalid assignment in gross. *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969).

This case presents a unique set of circumstances in which the assignment to Parkinson was part of a three-party agreement. Under this agreement, Camelot assigned Parkinson the Marilyn Mark, but sold its Marilyn Mark inventory to Robanda, which allegedly licensed from Parkinson the right to use the Mark for a

---

[1] As described by McCarthy on Trademarks and Unfair Competition, "'good will' is an intangible concept that can be defined as a bundle of commercial expectations that signifies the favorable reputation of a business, product or service." 3 McCarthy on Trademarks & Unfair Competition § 18:2 (4th ed. 2015).

2

five-year period.  Both the purchase agreement between Camelot and Robanda as well as the license agreement between Parkinson and Robanda state that Robanda will acquire the trademark after the five-year licensing period.  The documents constituting the three-party agreement, however, are less than clear regarding whether Robanda or Parkinson initially received the goodwill of the Mark.  Although the purchase agreement between Camelot and Robanda gave Robanda the Marilyn Mark inventory and business assets, it can be fairly read to state that Robanda had *not* purchased the Mark itself or its goodwill.  Rather, under Article 1.3 of the contract, Robanda needed to license the trademark for a five-year period following the close of sale, before it would acquire both the trademark and its goodwill, apparently from Parkinson.   This agreement, however, appears to be inconsistent with statements in the licensing agreement executed by Parkinson to the effect that Robanda had purchased the "inventory *and goodwill* of the Marilyn brand."

Without attempting to construe these agreements or resolve any inconsistencies at this stage of the proceedings, the district court determined that the assignment to Parkinson was an invalid assignment in gross because she did not allege that she ever sold products under the Mark and admitted that Camelot sold the business assets to Robanda.  That cannot, however, be the end of the

3

inquiry because we have previously upheld a trademark assignment even when someone other than the assignee possessed and distributed the business assets associated with a trademark. *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). In fact, it is a "well-settled commercial practice" to engage in what is referred to as an "assignment/license-back" agreement—a transaction in which Company A assigns a trademark to Company B, but continues to utilize the trademark under a license with Company B. *Id.* Such agreements are valid so long as the transfer "does not disrupt continuity of the products or services associated with a given mark," such as when the assignee receives sufficient information "to continue the lure of the business" that had been established prior to the assignment. *Id.* at 1289–90.

Admittedly, the circumstances in the case before us are different from the ordinary assignment/license-back agreement because the agreements here involve three parties instead of only two. Our inquiry, however, should functionally be the same: did the transaction as a whole "disrupt the continuity of the products or services associated with a given mark"? *Id.* at 1290.

As currently alleged, the complaint fails to show that a disruption did not occur. Unlike the assignment/license-back agreement that we upheld in *Gallo*, Parkinson has not alleged that she was provided with "information 'sufficient to

4

enable [her] to continue the lure of business [Camelot] had been conducting under the [Marilyn Mark]'" or that she had any related expertise that would allow her to appropriately maintain the quality of the Mark through her license to Robanda. *Id.* at 1289. Without such allegations, it is impossible to conclude—especially in light of the contradictory statements in the contracts forming this three-party agreement—that Parkinson received a valid assignment. We agree, therefore, that the dismissal was not improper.

We disagree, however, with the district court's conclusion that Parkinson should not be given leave to amend because it is not clear to us that amendment would necessarily be futile. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637–38 (9th Cir. 2012). Parkinson may be able to adequately plead ownership if she explains the circumstances of the three-way agreement and sets forth factual allegations tending to show that she maintained actual control sufficient to ensure continuity of the mark consistent with our holding in *Gallo*. Accordingly, we reverse the dismissal *with prejudice* and remand with instructions for the district court to allow Parkinson to amend the complaint. We reject, however, Parkinson's request to have the case reassigned to a different district judge on remand.

Finally, we decline to reach the alternative ground for dismissal suggested by Robanda—that the case should be dismissed under Rule 12(b)(7) for failing to join a necessary party. A Rule 12(b)(7) inquiry is largely a "practical, fact-specific one," and we believe that the question is best addressed by the district court in the first instance. *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002).

**REVERSED IN PART and REMANDED with instructions.**

*Nina Parkinson v Robanda International Inc 14-55028*

M. SMITH, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's holding that Parkinson failed to allege a valid claim for ownership of the trademark. I disagree, however, that the district court abused its discretion in dismissing Parkinson's complaint with prejudice.

Collectively, the licensing agreement and asset purchase agreement attached to the complaint contain a number of contradictions with Parkinson's allegations. When deciding a motion to dismiss under Rule 12(b)(6), we need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); Federal Rule of Civil Procedure 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, we are not obligated to credit "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988. In this case, the inconsistencies in the transactional documents attached to the complaint are legion, and the district court did not abuse its discretion in determining that no manner of amendment could cure such deficiencies.

First, the licensing agreement—the sole document signed by Parkinson herself—states that Robanda purchased "the goodwill of the Marilyn brand from

Camelot." This bold statement is patently inconsistent with the allegations in the complaint, which claims that the goodwill transferred with the assignment to Parkinson. Parkinson cannot plausibly amend the complaint to account for this discrepancy, or retract her own admission that goodwill had transferred. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (amendments must allege "facts consistent with the challenged pleading."). Nor, as the majority acknowledges, does the asset purchase agreement offer clarity on this point.

Equally damning is Parkinson's admission in the licensing agreement that she received no consideration for licensing the mark to Robanda. "California courts have repeatedly refused to enforce gratuitous promises, even if reduced to writing in the form of an agreement." *Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1249 (2004). A significant risk of consumer confusion would ensue if the assignee had no legally valid means of enforcing the terms of a licensing agreement. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). Nor, it appears, could Parkinson cure this defect without directly contradicting the admission made in her licensing agreement, a document integral to her underlying trademark infringement claim.

Given this morass of inconsistencies, the district acted well within its discretion in determining that amendment would be futile. Accordingly, I would

2

affirm the district court's judgment call in this situation.

I respectfully dissent.