**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PRODUCE PAY, INC.,
     *Plaintiff-Appellant*,

   v.

IZGUERRA PRODUCE, INC.; SERGIO B.
FIERRO; CARLOS F. FIERRO; MARIA
T. FIERRO; DOES, 1 through 10,
inclusive,
     *Defendants-Appellees.*

No. 20-56181

D.C. No.
2:19-cv-10165-
CBM-GJS

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted December 7, 2021
Pasadena, California

Filed July 8, 2022

Before: Paul J. Kelly, Jr.,[*] Milan D. Smith, Jr., and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Kelly;
Dissent by Judge Milan D. Smith, Jr.

---

[*] The Honorable Paul J. Kelly, Jr., United States Circuit Judge for
the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

**SUMMARY**[**]

**Perishable Agricultural Commodities Act**

The panel reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of an action brought by Produce Pay, Inc., against Izguerra Produce, Inc., under the Perishable Agricultural Commodities Act and remanded for further proceedings.

Produce Pay holds a PACA license issued by the United States Department of Agriculture. Produce Pay and Izguerra agreed that Izguerra, through Produce Pay's online platform, would receive and accept produce from a grower and sell the produce to retailers on Produce Pay's behalf. Izguerra bought 1,600 cartons of avocados from Produce Pay through its online platform and, pursuant to the parties' agreement, received the avocados directly from the Mexican grower. Produce Pay issued Izguerra an invoice representing the net proceeds from the avocados, but Izguerra did not fully pay. The district court dismissed Produce Pay's PACA claims on the ground that, as a matter of law, Produce Pay was not a seller of wholesale produce, and thus not entitled to PACA protections, because the transaction between Produce Pay and Izguerra was a secured loan rather than a true sale.

The panel held that Produce Pay alleged the five preliminary elements of a PACA claim by alleging that the avocados were perishable, Izguerra was a dealer of avocados, the transaction occurred in contemplation of interstate or foreign commerce, Produce Pay did not receive

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

full payment, and the invoice for the avocados stated that they were sold subject to a PACA statutory trust. Further, Produce Pay plausibly alleged that it was a seller or supplier under PACA, rather than only a lender, because Produce Pay alleged facts that resembled a consignment transaction between it and Izguerra and suggested that Produce Pay functioned as a seller. The panel distinguished *S&H Packing & Sales Co. v. Tanimura Distributing, Inc.*, 883 F.3d 797 (9th Cir. 2018) (en banc), which applied a transfer-of-risk test to an accounts receivable factoring arrangement at the summary judgment stage, as well as an unpublished decision of the Sixth Circuit.

Dissenting, Judge M. Smith wrote that the pleadings as a whole, including exhibits attached to the complaint and incorporated by reference, were far more consistent with a financing arrangement whereby Produce Pay advanced credit to a wholesaler and used the avocados and their proceeds as collateral, than with the conclusion that Produce Pay was an unpaid seller or supplier within the meaning of PACA. Consequently, Produce Pay was not entitled to PACA's protections. Judge M. Smith wrote that, in concluding otherwise, the majority glossed over the terms of the parties' contract, ignored PACA's statutory purpose, and downplayed the importance of the en banc decision in *Tanimura*.

**COUNSEL**

Robert M. Brochin (argued) and Clay M. Carlton, Morgan Lewis & Bockius LLP, Miami, Florida; Thomas M. Peterson, Morgan Lewis & Bockius LLP, San Francisco, California; for Plaintiff-Appellant.

Maurice Wainer (argued), Snipper Wainer & Markoff, Beverly Hills, California, for Defendants-Appellees.

Rebecca K. O'Brien and Jonathan M. Saffer, Rusing Lopez & Lizardi PLLC, Tucson, Arizona; Robert M. Warzel, Rusing Lopez & Lizardi PLLC, Scottsdale, Arizona; for Amici Curiae Delta Fresh Sales LLC and Chucho Produce LLC.

**OPINION**

KELLY, Circuit Judge:

Plaintiff-Appellant Produce Pay, Inc. (Produce Pay) appeals from the district court's dismissal of its federal claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). In its complaint, Produce Pay alleged that Defendant-Appellee Izguerra Produce, Inc. (Izguerra) violated several provisions of the Perishable Agricultural Commodities Act (PACA), and it also brought several state-law claims. After dismissing Produce Pay's PACA claims, the district court declined to exercise supplemental jurisdiction over the state law claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

As alleged in its complaint, Produce Pay is a Delaware corporation that buys and sells wholesale produce internationally through its online platform. It also offers loans and advances to growers to fund the planting, cultivating, shipping, and marketing of crops. Produce Pay holds a PACA license issued by the United States Department of Agriculture (USDA).

Relevant here, growers, often in Mexico, post to the online platform when they have produce to sell and distributors, such as Izguerra, can arrange for the produce to be shipped to them. The distributor then distributes the produce to various retail outlets. Produce Pay obtains title to the produce, but because of the perishable nature of produce, the produce is shipped directly from the grower to the distributor in the United States. Upon receipt of the produce, the distributor then informs Produce Pay how much of the produce is marketable, and Produce Pay pays the grower. The distributor is then responsible for reselling the produce on consignment and must remit the gross proceeds to Produce Pay less the distributor's commission and any permissible expenses or deductions. In addition, Produce Pay charges the distributor a "marketplacing commission" when the distributor connects with new growers through Produce Pay's online platform. This system, which amici contend is typical for the industry, "facilitates the movement of produce from farm to market," in an international industry where "there is often little time to draft and sign formal contracts" because of the perishable and unpredictable nature of the products. Amici Curiae (Delta Fresh Sales, L.L.C. and Chucho Produce, L.L.C.) Br. at 7 (quoting John F. Munger, *Importation of Mexican Produce into the United*

*States: Procedures, Documentation, and Dispute Resolution*, 30 Ariz. J. Int'l & Comp. L. 605, 607 (2013)).[1]

In January 2019, Produce Pay and Izguerra agreed that Izguerra, through Produce Pay's online platform, would receive and accept produce from a grower and subsequently sell the produce to retailers on Produce Pay's behalf. While the parties' agreement—titled the Distribution Agreement— stated that Produce Pay would retain title to the produce before it was sold on consignment by Izguerra, Produce Pay limited its risk in the event that Izguerra failed to sell any of the marketable produce. For example, if Izguerra could not sell the produce at an expected price, Izguerra was still responsible for a "marketplacing commission" and Produce Pay reserved the right to recover its commission from other produce shipments accepted by Izguerra. In addition, the parties' agreement provided that Izguerra bore any default risk regarding purchasers of the produce.

In April 2019, Izguerra bought 1,600 25-pound cartons of avocados from Produce Pay through its online platform. Pursuant to the parties' agreement, Izguerra received the avocados directly from the grower. Izguerra then confirmed its receipt and approval of the shipment on Produce Pay's online platform. Produce Pay subsequently issued Izguerra an invoice for the avocados for $70,560.00. This amount represented the net proceeds from the avocados. Produce

---

[1] The dissent challenges our reliance on amici and a law review article. *See* Dissent at 33. While noting that the dissent relies upon such secondary sources as a legal dictionary and treatises, indeed even Produce Pay's website, we recognize that such sources are hardly binding. The challenged sources help illustrate how a sophisticated industry has adapted to the unremarkable fact that avocados are highly perishable and have a short shelf life.

Pay's invoice reiterated that the avocados were sold "subject to the [PACA] statutory trust."

Izguerra never fully paid Produce Pay and had an outstanding balance of $63,786.56 by November 2019. Consequently, Produce Pay filed suit and alleged several claims under PACA. The district court granted Izguerra's motion to dismiss with prejudice concluding that as a matter of law Produce Pay was not a seller of wholesale produce and thus not entitled to PACA protections. Specifically, the district court applied the transfer-of-risk test articulated by this court in *S&H Packing & Sales Co. v. Tanimura Distributing, Inc.*, 883 F.3d 797, 813 (9th Cir. 2018) (en banc), and found that the transaction between Produce Pay and Izguerra was a secured loan rather than a true sale. The district court recharacterized the transaction as a secured loan because Izguerra bore all the risk if one of its purchasers defaulted, Izguerra was liable for damages for a variety of adverse contingencies that might result in non-payment, and Produce Pay reserved the right to collect deficits from its other transactions with Izguerra.

On appeal, Produce Pay argues that the district court erred by not crediting Produce Pay's well-pled factual allegations which it maintains state a plausible PACA claim. Produce Pay also objects to the district court's recharacterization of the transaction from a sale to a secured loan. Finally, it maintains that dismissal without leave to amend was improper given the liberal policy favoring amendment.

## DISCUSSION

### A.  Standard of Review

This court reviews the dismissal of a complaint under Rule 12(b)(6) de novo.  *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890 (9th Cir. 2019).  "In so doing, we accept all well-pleaded factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff."  *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020).  However, "we 'need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'"  *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  Dismissal is improper where the complaint alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.  Produce Pay plausibly alleged that it was a seller or supplier under PACA.

PACA was enacted in 1930 to prevent unfair business practices and create stability and financial responsibility in the fresh produce industry.  *Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.*, 692 F.3d 960, 963 (9th Cir. 2012).  PACA prevents dealers or commission merchants, like Izguerra, from failing to pay in full promptly for any produce they receive in interstate commerce.  7 U.S.C. § 499b(4).  Additionally, PACA requires produce held by a commission merchant or dealer to be held "in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction."  7 U.S.C. § 499e(c)(2).  Thus, as a preliminary matter, Produce Pay must allege the following to state a PACA claim:

(1) the commodities sold were perishable agricultural commodities, (2) the purchaser was a commission merchant, dealer, or broker, (3) the transaction occurred in contemplation of interstate or foreign commerce, (4) the seller has not received full payment on the transaction, and (5) the seller preserved its trust rights by including statutory language referencing the trust on its invoices.

*Sun Hong Foods, Inc. v. Outstanding Foods, Inc.*, No. CV19-10121, 2020 WL 2527048, at *3 (C.D. Cal. Mar. 26, 2020) (quoting *Tom Ver LLC v. Organic All., Inc.*, No. 13-CV-03506, 2015 WL 6957483, at *8 (N.D. Cal. Nov. 11, 2015)). *See generally Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282–83 (9th Cir. 1997).

Here, Produce Pay has alleged these five preliminary elements. The avocados are perishable. Izguerra is a dealer of avocados. The transaction involved a grower in Mexico; a California dealer; and Produce Pay, which is a Delaware corporation, and therefore occurred in contemplation of interstate or foreign commerce. Produce Pay has alleged an outstanding balance of $63,786.56. And finally, the initial invoice for the avocados states that the avocados were sold "subject to the [PACA] statutory trust." The point of contention is whether Produce Pay was an "unpaid supplier[] or seller[]" under PACA.[2] 7 U.S.C. § 499e(c)(2). While

---

[2] While the district court focused on whether Produce Pay was an unpaid seller, Produce Pay alleged in its complaint (and argues on appeal) that it was both an "unpaid supplier" and an "unpaid seller." However, it did not distinguish between these two categories in its

PACA protects the interests of suppliers and sellers of produce, it does not protect the interests of parties who are only lenders. *See Tanimura*, 883 F.3d at 802–03. Izguerra contends that Produce Pay was not a seller because the avocados were sold to Izguerra directly by the grower.[3]

We conclude that Izguerra's characterization of the transaction is at odds with Produce Pay's allegations and incorporated exhibits, which we must construe in Produce Pay's favor. *See Walker*, 953 F.3d at 1086. Produce Pay alleges facts that resemble a consignment transaction between Produce Pay and Izguerra and suggest Produce Pay functioned as a seller. Produce Pay alleges that it sold approximately 20 tons of avocados to Izguerra through its online platform for Izguerra "to sell on consignment." Produce Pay also alleges that it bought the avocados from the grower and retained title to the avocados, even though they were shipped directly to Izguerra from the grower.

Produce Pay attached exhibits to its complaint that support its allegations. The Distribution Agreement between Produce Pay and Izguerra provides that Produce Pay is "a bona fide purchaser acting in good faith," and that "title to the produce will remain with [Produce Pay]" until sold to a retailer "on a consignment basis." The agreement also outlines the structure of a consignment transaction. Izguerra receives a commission from the sale, but it was

_____

arguments. Therefore, for simplicity we refer only to "unpaid seller" in analyzing this issue.

[3] This court declines to address Izguerra's alternative argument that Produce Pay waived its PACA claims as Izguerra failed to adequately address the issue on appeal or make a similar argument before the district court. *See J. K. J. v. City of San Diego*, 17 F.4th 1247, 1261–62 (9th Cir. 2021).

required to remit other proceeds to Produce Pay.  In finding that PACA did not apply, the district court pointed out the ways in which Produce Pay limited its risk in the distribution agreement.  However, the allegations and exhibits must be construed holistically in favor of Produce Pay, and Produce Pay plausibly alleges a consignment transaction.

Additionally, it is not enough for Izguerra to point out that Produce Pay never physically possessed the avocados. An avocado can go from perfectly ripe to blackened, bruised, and inedible with remarkable speed. Thus, in the perishable produce industry, physical possession alone is a poor indicator of who has title.  *See* Munger, 30 Ariz. J. Int'l & Comp. L. at 606–07, 617.  While Izguerra may have second thoughts regarding the deal it struck, at this point we cannot conclude that the transaction did not afford Produce Pay protection under PACA.  Produce Pay has plausibly alleged that it is a seller entitled to PACA's protections and that the parties' transaction was a consignment deal rather than a secured loan.

The district court applied the transfer-of-risk test articulated by this court in *Tanimura*, 883 F.3d at 805–09, to determine that PACA does not apply.  *Tanimura* involved growers who sold produce on credit to a distributor (Tanimura).  Tanimura in turn sold to retailers on credit and then transferred the resulting accounts receivable to AgriCap Financial.  AgriCap described it as a sale of the accounts pursuant to a factoring arrangement, but the transaction also resembled secured lending because AgriCap took a security interest in the accounts, filed financing statements, and had recourse against Tanimura if the receivables were uncollectible.  *Id.* at 799.  Tanimura became insolvent without paying the growers, and the growers sued AgriCap. *Id.* at 799–800.  The court adopted a transfer-of-risk test to

determine whether the transfer of receivables was part of a secured loan or a sale. *Id.* at 813. A secured loan meant that the receivables were part of PACA trust and therefore gave the growers priority. *Id.* at 804. A commercially reasonable sale would have removed the proceeds from the PACA trust. *Id.*

The *Tanimura* court adopted a two-step inquiry. *Id.* at 801. First, a court must determine whether the transaction is a true sale by primarily looking at whether the transaction transferred the risk of nonpayment of the receivables to the buyer as opposed to merely providing a security interest. *Id.* at 801–02. Absent a true sale, the assets remain part of the PACA trust. *Id.* Second, if it is a true sale, a court must assess whether the sale is commercially reasonable. *Id.* at 802. If it is, the assets are not part of the PACA trust. *Id.*

The court articulated "a number of factors" that may be used to assess where the risk was allocated in a factoring agreement. *Id.* at 805–06. In particular, it was concerned with whether the sale of the accounts receivable breached the PACA trust previously created by the transaction between the grower and the distributor. *Id.* at 804–05. The court noted that this test was proper on a motion for summary judgment where it "is not perfectly clear," and "when the true nature of the transaction is ambiguous." *Id.* at 804.

Unlike *Tanimura*, this case does not involve an accounts receivable factoring arrangement. It does not appear that Produce Pay "loaned" the avocados to Izguerra, took a security interest in Izguerra's receivables, or filed a financing statement. Produce Pay alleged that Izguerra failed to pay for produce that Izguerra itself received from Produce Pay, while in *Tanimura*, growers protected by a PACA trust were suing a third-party for violating the trust. In other words, *Tanimura* analyzed whether a sale occurred

to determine whether a PACA trust was violated. But here, the question is whether Produce Pay is an "unpaid supplier[] or seller[]" entitled to the protections of a PACA trust in the first place. 7 U.S.C. § 499e(c)(2).

Furthermore, the *Tanimura* court found that applying the transfer-of-risk test was appropriate at the summary judgment stage, 883 F.3d at 801, while this case arises on a motion to dismiss. The *Tanimura* court noted that the district court, when applying the transfer-of-risk test on remand, should "use all the tools at its disposal, consistent with what we have said in this opinion, including the taking of testimony and making findings of fact, to determine whether the agreement was in substance a true sale or in substance a lending agreement." *Id.* at 813. Here, no testimony has been taken nor any discovery conducted as to the relationship between the growers, Produce Pay, and Izguerra. A substantive, fact-intensive inquiry into "the rights and risks transferred between the parties," is more suitable after discovery, at summary judgment, especially to consider the relationship and priority implications between all parties. *Tanimura*, 883 F.3d at 805.

Izguerra also argues that we should follow *In re Spiech Farms, LLC* (*Spiech*), where the Sixth Circuit found that Produce Pay was "ineligible for relief through its PACA claim." 840 F. App'x 861, 863 (6th Cir. 2021).[4] *Spiech* involved a bankruptcy proceeding where Produce Pay claimed priority under PACA to Spiech's assets. *Id.* There, Produce Pay gave the grower short-term loans as a partial advance on later payments the grower was supposed to

---

[4] Both the district court and Izguerra discussed the Western District of Michigan's opinion in that case. However, the Sixth Circuit has since affirmed the district court's decision, and we review that opinion.

receive from its existing customers (rather than from new distributors it had identified through Produce Pay's online platform). *Id.* at 864. The grower was then required to repay the loan plus a commission, which in effect was interest. *Id.* After an evidentiary hearing, the bankruptcy court found that Produce Pay was not a seller in this transaction and, therefore, not covered by PACA. *Id.* at 865. The Sixth Circuit, in an unpublished opinion, applied our *Tanimura* transfer-of-risk test and found that Produce Pay was not protected by PACA. *Id.* at 867–68.

Much like *Tanimura*, *Spiech* applied the transfer-of-risk test to different facts at a different point in the litigation to answer a different question than that posed here. Unlike here, *Spiech* involved an agreement between the grower and Produce Pay, rather than the distributor and Produce Pay. *Id.* at 863. Additionally, in *Spiech*, Produce Pay was functioning as a lender so that the grower could "increase its cash flow," rather than as a purchaser of perishable goods. *Id.* at 864. In contrast, here Produce Pay does not assert, and the Distribution Agreement does not appear to create a right to additional payments over time that could be construed as interest, rather than as a late payment penalty. Produce Pay alleges in the instant complaint that it both "buys and sells wholesale quantities of perishable agricultural commodities," and is "engaged in the business of providing cash flow and alternative financing solutions to fresh Produce sellers or growers." Produce Pay is a company that offers various products and services in the perishable produce industry, and the transactions alleged here and considered in *Spiech* are clearly different.

Finally, *Spiech* involved a procedural posture much more analogous to *Tanimura* than the instant case. The Sixth Circuit applied the transfer-of-risk test after the bankruptcy

court had already conducted an evidentiary hearing. *Id.* at 865. Thus, it made the determination on a record that was much more developed than what we have in this case. *Spiech* does not demonstrate that the fact-intensive transfer-of-risk test is appropriate at the pleading stage when neither party has had an opportunity to present evidence or conduct discovery.

The dissent essentially recognizes that the complaint adequately pleads that Produce Pay is an unpaid seller or supplier and that consignment sales are protected transactions under PACA. Dissent at 26–27. According to the dissent, the exhibits attached to the complaint conclusively establish that Produce Pay is not an unpaid seller, but rather a lender. Dissent at 31–32. This is so because Produce Pay transferred some of the risk of the transaction to the consignee, and while it had title to the avocados, Produce Pay never took possession. The dissent maintains that the correct analogy is a home mortgage in a title theory state. The dissent notes that Produce Pay should be satisfied with other remedies against Izguerra, including breach-of-contract and tort claims.

The dissent contends that we have not afforded *Tanimura* sufficient weight and have been deceived by Produce Pay's pleadings. However, *Tanimura* must be read against its facts, which varied considerably from this case, and did not include anything resembling a consignment transaction. Additionally, the *Tanimura* court restricted its holding to factoring agreements, or sales of accounts receivable to a third party who was not involved in the transfer of produce. *See* 883 F.3d at 802, 809, 813. There simply was no such transaction here. To analogize this case to that one is to pound a square peg into a round hole.

Beyond the factual differences, *Tanimura* applied the "transfer-of-risk" test with the precise and limited purpose of determining whether the assets were part of a PACA trust. It did not establish a test for determining who is an unpaid seller and thus a beneficiary of a PACA trust. Indeed, in *Tanimura*, no one disputed who the trust beneficiary was— we summarily found that the arrangement there "made [the distributor] a trustee over a PACA trust holding the perishable products and any resulting proceeds for [the growers] as PACA-trust beneficiaries." *Id.* at 799.

This question of status that was assumed in *Tanimura* is what we must squarely answer here. And nothing in PACA or *Tanimura* prevents a business from buying produce from a grower outright, and then supplying that produce to a distributor in a way such that the business receives PACA priority. Unlike in *Tanimura*, Produce Pay is not an external lender attempting to leapfrog an unpaid grower by enforcing a security interest it took in Izguerra's assets. Produce Pay alleges that it is the supplier or seller of avocadoes, and thus an internal party to the transaction.

Furthermore, the *Tanimura* court made clear that the transfer-of-risk test is appropriate where "the true nature of the transaction is ambiguous." *Id.* at 804. However, this court must "accept[] as true" the plaintiff's factual pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The dissent ignores the well-pleaded facts, which on a motion to dismiss must be taken as true. Instead, while recognizing ambiguity exists, the dissent focuses on various documentary items which could cover several different types of transactions, depending on a particular situation, to determine which "features predominate." Dissent at 33. As "it is improper to [accept the truth of matters asserted in incorporated documents] only to resolve factual disputes against the

plaintiff's well-pled allegations in the complaint," the dissent errs. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018). Produce Pay must simply state a plausible claim, rather than one that is likely to succeed. *Ashcroft*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555–56.

Furthermore, the dissent relies on *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001), for the proposition that the exhibits fatally undermine Produce Pay's claims. Dissent at 27 n.3. In that case, however, this court affirmed the dismissal of race discrimination claims where the attached arbitration decision (by a neutral arbitrator after a full hearing and briefing) directly contradicted the complaint. *Sprewell*, 266 F.3d at 984, 988–89. Here, while the dissent may identify certain provisions it finds compelling, the attached exhibits in this case do not uniformly or directly contradict Produce Pay's allegations.

Finally, this court notes that the dissent treats *Tanimura*'s transfer-of-risk test as the sole focus of its inquiry. *See* Dissent at 30–32. However, *Tanimura* simply requires "a threshold true sale test of which the transfer-of-risk [test] is a key, but not the sole, factor." 883 F.3d at 801. The *Tanimura* court does not appear to suggest that courts must set aside traditional principles of contract interpretation when considering PACA claims.

As we find that Produce Pay plausibly alleges a PACA claim, it is unnecessary to decide whether it was appropriate for the district court to dismiss the complaint without leave to amend. We express no opinion on the merits of Produce Pay's PACA claims, instead concluding only that, construing the pleadings in favor of Produce Pay, *Tanimura* does not bar Produce Pay from qualifying as an unpaid seller under PACA as a matter of law.

Accordingly, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

---

M. SMITH, Circuit Judge, dissenting:

PACA protects only "unpaid seller[s] or supplier[s] of produce," not financiers who made a bad investment. 7 U.S.C. § 499e(c)(2).   With respect, I fear that my colleagues have been led astray by Produce Pay's artful attempts to plead that it was an unpaid seller or supplier within the meaning of PACA.  Although some conclusory allegations in the complaint may suggest otherwise, plaintiff Produce Pay was not acting as a simple avocado seller here. The pleadings as a whole—including especially the exhibits attached to the complaint and incorporated by reference— are far more consistent with an alternative financing arrangement, whereby Produce Pay advanced credit to a wholesaler and used the avocados and their proceeds as collateral.  Consequently, though it can sue to recover its investment in contract or tort, it is not entitled to PACA's protections.  In concluding otherwise, the panel glosses over the terms of the parties' contract, ignores PACA's statutory purpose, and downplays the importance of our court's en banc decision in *S & H. Packing & Sales Co. v. Tanimura Distributing, Inc.*, 883 F.3d 797 (9th Cir. 2018) (*Tanimura*). I therefore respectfully dissent.

## I.

Before addressing the specific transaction at issue here, I begin by addressing what I believe to be the majority's most serious error: its treatment of *Tanimura*.  The majority underreads that decision in concluding that it does not reach

beyond its facts, but then overreads it to conclude it created a rule that is inapplicable at the pleadings stage.

## A.

PACA provides that any produce or proceeds from produce transactions "received by a commission merchant, dealer, or broker . . . shall be held . . . in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction." 7 U.S.C. § 499e(c)(2). Congress created this trust remedy for the express purpose of reducing the "burden on commerce in perishable agricultural commodities [that] is caused by financing arrangements" pursuant to which dealers in agricultural commodities "who have not made payment" for the produce they have purchased use that same produce as collateral for lending arrangements. *Id.* § 499e(c)(1).

*Tanimura* is our court's seminal decision on how to interpret and apply PACA. In *Tanimura*, we recognized that PACA was intended to "shield agricultural growers" from the "risk" of non-payment that occurs when the buyer defaults, and "banks and other lenders" recover anything they can on their investments from these buyers. 883 F.3d at 802–03. Elaborating on this purpose, we explained that:

> [Produce sellers ordinarily] operate on bank loans secured by the inventories, proceeds or assigned receivables from sales of perishable agricultural commodities, giving the lender a secured position in the case of insolvency. Under [pre-existing] law, sellers of fresh fruits and vegetables [were] unsecured creditors and receive[d] little protection in any suit for recovery of damages where a buyer [had] failed to make payment as

required by contract. . . . Due to a large number of defaults . . . the sellers recover, if at all, only after banks and other lenders who have obtained security interests in the defaulting purchaser's inventories, proceeds, and receivables.

883 F.3d at 802–03 (first quoting H.R. Rep. No. 98-543 at *3 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 405, 407, and then *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995)).

In light of PACA's text, history, and purpose, *Tanimura* laid out "the proper analysis to apply when the true nature of [a] transaction is ambiguous—i.e. when it resembles a sale in some respects and yet looks like a secured transaction in others." *Id.* at 804.  As the majority explains, *Tanimura* involved a so-called "factoring" transaction.  Defendant Tanimura purchased produce from the grower plaintiffs for re-sale to third-party buyers, and then sold the accounts receivable from the sale to defendant AgriCap for quick cash at a slight discount. *See id.* at 799–800 & n.2.  While this transaction was "described as a sale of accounts," the growers argued that it was effectively a secured loan, noting among other facts that AgriCap could force a "repurchase" of the receivables from Tanimura in the event of non-payment by the buyers. *Id.* at 799–800.  On this theory, the receivables remained in the PACA trust because they had been pledged as collateral for cash rather than exchanged for other assets. *See id.* at 800.[1]

---

[1] This mattered in *Tanimura* because a PACA trustee has a fiduciary obligation "to ensure all trust beneficiaries are paid before the lender collects." *Id.* at 812.  If AgriCap had indeed made a loan to Tanimura

*Tanimura* held that, consistent with authority from other circuits, courts must look beyond the "labels" used by the parties to determine whether a "true sale" or a loan had occurred. *Id.* at 813. That distinction is drawn by looking at the substance of the transaction, especially how the parties allocated the risk of loss. *See id.*

**B.**

Perhaps recognizing that *Tanimura*'s focus on substance over form does not bode well for its analysis, the majority attempts to cabin *Tanimura* to its facts, suggesting that (1) it applies only to factoring agreements and (2) that whether Produce Pay was conducting a "sale" within the meaning of PACA does not impact whether Produce Pay was a "seller" protected by PACA. The second of these arguments is illogical on its face, and one wonders why *Tanimura*'s broad declarations about the need to focus on substance over form to effectuate PACA's purpose would apply to only some parts of the statute, but not others. Framed either as a question about whether a party has engaged in a sale or as a question about whether that party was a seller, the point of the transfer-of-risk test is to determine "the substance of the relationship" between the parties. *Id.* at 807 (quoting *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 414 (5th Cir. 2003)). When applying the transfer-of-risk test, if "the relationship between [the parties is] that of a secured lender and debtor, not a seller and buyer," it makes

---

and then enforced that loan by demanding a cash "repurchase" of the receivables, the result would have been that AgriCap—a mere lender—would have received payment before the produce growers, resulting in a breach of the PACA trust. *See id.*

no sense to conclude that one of the parties is nonetheless a "seller" protected by PACA. *Reaves*, 336 F.3d at 414.

As for the majority's first claim, *Tanimura* did, of course, involve a factoring transaction, so it is unsurprising that some of its language reflects this fact. *See, e.g.*, *id.* at 809 ("We conclude that this transfer-of-risk test should be applied to avoid reliance on labels *in factoring agreements* that would defeat the purposes of PACA." (emphasis added)). However, *Tanimura*'s overall language is much broader. Our opinion extensively discussed PACA's legislative history and express Congressional purpose, concluding that PACA is intended to protect agricultural growers against the interests of lenders. *See id.* at 802–03. We were unequivocal that, "[g]iven this history, it is evident that our focus should be upon the true nature of the transactions at issue and the true nature of the parties' roles—that of seller and buyer or that of secured lender and borrower." *Id.* at 803. "[C]ourts must focus on the true substance of PACA-related transactions and not on artificial indicators or labels," because "[i]t runs counter to PACA and its history to allow the simple use of the words 'sale,' 'purchase,' or 'factoring agreement' to be central for purposes of assessing the relative rights of lenders and produce growers." *Id.* at 808.

None of this language is limited to factoring transactions. To the contrary, we disapproved of relying "on labels" over substance, holding that a focus on form over economic substance would "defeat the purposes of PACA." *Id.* at 809. PACA's text provides no indication that factoring agreements are somehow special (nor does the majority provide any principled reason why this should be the case), suggesting instead that Congress drew a broader distinction between financiers and those playing a more direct role in

the agricultural supply chain. *See* 7 U.S.C. § 499e(c)(1)&(2) (distinguishing "unpaid sellers and suppliers" from "lenders" and others involved in "financing arrangements").

## C.

In another attempt to distinguish *Tanimura*, the majority latches onto the fact that our decision in *Tanimura* occurred at the summary-judgment stage, and the fact that we remanded the case to the district court with instructions to apply the transfer-of-risk test in the first instance, to divine a new rule that the transfer-of-risk test is inapplicable at the pleadings stage. *Tanimura* held no such thing, nor has the majority been able to identify any other decision in support of its new rule. In general, we have declined to create categorical rules that an issue cannot be resolved at the pleadings stage, even if the issue is fact-sensitive and often benefits from further development of the record. *See, e.g.*, *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 2022 WL 1218792, at *10 (9th Cir. 2022) (rejecting the argument that defining the relevant market and determining whether a practice is anticompetitive for an antitrust claim are "fact-bound issues not susceptible to resolution on a motion to dismiss"); *Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004) (explaining that a qualified immunity defense may be raised at the pleadings stage in civil rights cases despite the difficulties of "decid[ing] far-reaching constitutional questions on a nonexistent factual record"); *Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193 (9th Cir. 2021) (upholding dismissal of complaint based on qualified immunity); *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 & n.1 (9th Cir. 1997) (recognizing that "factual development" is sometimes necessary to apply First-Amendment balancing test, but rejecting as "illogical"

the argument that this test cannot be applied at the pleadings stage).

To the contrary, we have recognized that "[w]hether [a] case can be dismissed on the pleadings depends on what the pleadings say.  [A] plaintiff may plead herself out of court. If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." *Weisbuch*, 119 F.3d at 783 n.1 (cleaned up); *accord Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000) (a plaintiff can "plead[] himself out of court" by alleging facts that show he has "no claim" (quoting *Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir. 1994))).

As an illustration, it is hard to imagine that we could characterize a bank as a seller protected by PACA if it filed a complaint alleging that it lent money to a produce purchaser: in that case, it would be apparent from the face of the complaint that the bank had no PACA claim.  That claim would become no more plausible if the bank's pleadings contained essentially the same facts evincing a loan transaction, but added conclusory legal allegations that the transaction was a "sale" and that the bank was a "seller" within the meaning of PACA.  *See, e.g.*, *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) ("well-pleaded facts," not "legal conclusions," are necessary to survive a Rule 12(b)(6) motion (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))); *see also Tanimura*, 883 F.3d at 808–09 (the labels the parties place on their transaction do not control over the substance of the transaction).

Additionally, contrary to the majority's assertion, *Tanimura* did not instruct the district court that it "should"

engage in further factfinding; it said that "the district court *may* use all the tools at its disposal . . . including the taking of testimony and making findings of fact."  883 F.3d at 813 (emphasis added).  This was permission, not a command. *See also id.* at 813 n.13 (giving the district court "discretion to determine the appropriate procedure for conducting" the transfer-of-risk inquiry).

In fact, on remand, there was ultimately "no suggestion by the parties" that any additional fact-finding procedures were necessary. *S & H Packing & Sales Co. v. Tanimura Distrib., Inc.*, No. 08-cv-5250, 2018 WL 6011546, at *7 (C.D. Cal. Sept. 17, 2018) (noting that all relevant evidence was presented the parties' summary judgment briefs).  The district court did not find the case to be "a 'difficult' one," and concluded that the transaction was a loan.  *Id.*  Its analysis focused on the structure of the parties' agreement, with special attention to the financial terms, emphasizing that what "matters" is "the *structure* of the agreement, [i.e.] the rights that are afforded to the buyer/lender" rather than more fact-sensitive matters such as the parties' course of dealing.  *Id.*  This conclusion is fully consistent with our court's opinion, which focused on transfer of legal risk (i.e., by contractual formality) rather than a blow-by-blow account of how the transaction unfolded.

As I explain in more detail below, Produce Pay's and defendant Izguerra's agreement, along with other attached documents and factual allegations in the complaint, supply enough information to conduct that analysis here.[2]  The facts

---

[2] Produce Pay's appellate briefing further betrays that this case is appropriate for resolution at the pleadings stage without further discovery.  *See Whitaker*, 985 F.3d at 1177 ("[C]omplaints must plausibly suggest an entitlement to relief, such that it is not unfair to

that may be drawn from the pleadings as a whole evince a loan transaction rather than sale, despite Produce Pay's conclusory allegations that it was the seller in a consignment sale. *See Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 570; *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997) ("[M]aterial which is properly submitted *as part of the complaint* may be considered on a motion to dismiss.").

## II.

Turning to the specifics of this case, I do agree with the majority on two points. First, "While PACA protects the interests of suppliers and sellers of produce, it does not protect the interests of lenders." Second, as a consequence, the relevant question in this appeal "is whether Produce Pay was an 'unpaid supplier[] or seller[]' under PACA" for purposes of this transaction. *See* 7 U.S.C. § 499e(c)(2). Unfortunately, I cannot agree with how the majority answers this question.

## A.

If the court's task were to consider the complaint in isolation, without looking to any of the attached exhibits, a case could be made that Produce Pay adequately pleaded it was an unpaid seller. The complaint describes Produce Pay not as a provider of financing solutions, but as a Los Angeles-based wholesaler of avocados and other produce. It alleges that Produce Pay entered into an agreement with

---

require the opposing party to be subjected to the expense of discovery and continued litigation." (cleaned up)). It offers no additional facts that, if properly pleaded, could show this was a sale rather than a loan. For that same reason, I would affirm the district court's decision to dismiss this case without leave to amend. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

defendant-appellee Izguerra Produce, Inc. to sell avocados to third parties. Throughout the complaint and the attached contract, the arrangement between Produce Pay and Izguerra is described as a "consignment" transaction, meaning "[a] sale of an owner's property . . . by a third party entrusted to make the sale," Sale, *Black's Law Dictionary* (11th ed. 2019) (citing UCC § 9-102(a)(20)). It is undisputed that PACA and its implementing regulations treat consignment sales as protected transactions. *See, e.g.*, 7 U.S.C. § 499b(2), (4); 7 C.F.R. § 46.2(aa)(1), (2).

However, Produce Pay' complaint references several attached exhibits—including its contract with Izguerra and invoices sent during the parties' transaction—that contradict its claim that it was an unpaid seller rather than a financier. Even at the pleadings stage, we may—and should—consider these documents (as well as any matters properly subject to judicial notice) to the extent they contradict the allegations in the complaint. *See, e.g.*, *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("Although we normally treat all of a plaintiff's factual allegations in a complaint as true, we 'need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and collecting cases)).[3]

---

[3] The majority quotes *Khoja v. Orexigen Therapeutics, Inc.*, for the proposition that "it is improper" to rely on incorporation by reference "only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint." 899 F.3d 988, 1014 (9th Cir. 2018). *Khoja* did not disturb our line of cases that discuss "contradictions" between pleadings and documents attached to these pleadings, such as *Gonzalez* and *Sprewell*. Moreover, reading our statement from *Khoja* in context, it is clear we were concerned with situations where a defendant cherry-

Specifically, the complaint alleges that Produce Pay bought "approximately 40,000 pounds" of avocados from sellers in Mexico, and then "entrusted" them to Izguerra to sell to buyers located in California, among other places. Both the complaint and the contract indicate that the avocados were shipped directly from the growers to Izguerra, without Produce Pay ever physically possessing them. The contract indicates that the avocados were shipped to Izguerra at the very beginning of the transaction. If Izguerra accepted the shipment, it was supposed to indicate that by uploading shipping documents on Produce Pay's online platform. Only then would Produce Pay "take title" to the avocados and, at "its sole discretion," "remit a first payment" to the growers. Produce Pay also had the right to send Izguerra an invoice at this point in the transaction.

---

picks between numerous incorporated documents from which competing inferences can be drawn to dispute a plaintiff's otherwise well-pleaded factual assertions. *See, e.g.*, *id.* at 1002 ("The district court's reasoning here again demonstrates the danger in incorporating documents en masse into complaints. Once documents are incorporated into a complaint, a district court faces competing, often inconsistent versions of the facts. Although plaintiffs are ordinarily afforded the benefit of every favorable inference, the incorporation-by-reference doctrine can allow defendants to exploit that benefit for themselves.").

*Khoja* did not involve a situation such as this where the attached documents provide *additional* facts omitted from the complaint that "fatally undermine[]" the plaintiff's claims. *Sprewell*, 266 F.3d at 988 (holding district court properly considered attached arbitration award at the pleadings stage); *see also Khoja*, 899 F.3d at 1002 (explaining that the incorporation-by-reference doctrine is supposed to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *id.* at 1003 (noting that this doctrine "is designed to prevent artful pleading").

Produce Pay retained title to the avocados until Izguerra sold them.

However, the contract attached to the complaint provides details about the business terms of the parties' agreement that contradict the complaint's conclusory allegations. On top of a "Marketplacing Commission" earned for introducing Izguerra to its approved suppliers, Produce Pay was entitled to all proceeds from the eventual sale of the avocados, minus a "Distributor's Commission" pocketed by Izguerra and deductions for certain expenses. If Izguerra sold the avocados for less than the amount it owed Produce Pay for them, it had to forfeit as much of its profits as necessary to make up the deficit. The parties' contract also shifted "all default risk" to Izguerra, meaning that Izguerra was required to "compensate" Produce Pay if the third-party buyers failed to make payment after taking possession of the avocados.

Consistent with these terms, Produce Pay sent a $70,5600 invoice to Izguerra after it confirmed receipt of the avocados. Izugerra sold the avocados but ultimately remitted only $15,000 to Produce Pay, resulting in an outstanding invoice for $63,786.56 including interest and attorneys' fees.

The district court correctly concluded that this transaction is more aptly categorized as a secured financing arrangement rather than a sale. *Tanimura* held that courts must "apply a threshold true sale test for which the transfer-of-risk is a primary factor" in order to determine whether a given transaction is a sale or a loan. *Id.* at 813. Factors relevant to assessing the parties' transfer of risk include (but are not necessarily limited to) "[1] the right of the creditor to recover from the debtor any deficiency if the assets assigned are not sufficient to satisfy the debt, [2] the effect on the

creditor's right to the assets assigned if the debtor were to pay the debt from independent funds, [3] whether the debtor has a right to any funds recovered from the sale of assets above that necessary to satisfy the debt, and [4] whether the assignment itself reduces the debt." *Tanimura*, 883 F.3d at 808 (quoting *Endico Potatoes*, 67 F.3d at 1068) (brackets in original).

"Transfer of risk" simply refers to the different ways risk is allocated in a sale versus a loan. *See Tanimura*, 883 F.3d at 808–09. Put simply, a true sale involves a direct assumption of risk by one of the parties, while a lender's risk is only indirect. To use an example discussed in *Tanimura*, in a simple sale of receivables, the seller would end up with cash and the buyer would end up with the right to collect payment from a third party. *Id.* In this example, the entire risk of a default by that third party would be borne by the buyer. *Id.* In a cash loan secured by receivables, however, the borrower would still be liable to the lender in the event of a default. *See id.*

In a consignment sale, the consignor entrusts goods to a consignee to sell goods to a third party. *See, e.g.*, Sale, *Black's Law Dictionary* (11th ed. 2019) (citing UCC § 9-102(a)(20)). This does not create an ordinary security interest in the goods. *See, e.g.*, UCC § 9-102(a)(20)(D) (consignment "does not create a security interest that secures an obligation"). Instead, a consignment arrangement is best described as a bailment: unless the consignee is able to sell the goods to a third party, it is not obligated to pay the consignor, who retains legal title to the goods even as the consignee takes possession of them. *See, e.g.*, *In re Pettit Oil Co.*, 917 F.3d 1130, 1133–34 (9th Cir. 2019) (citing 5 Collier on Bankruptcy ¶ 541.05[1][b] (16th ed.) (2018)) (but holding that consignee is treated as owner of consigned

goods when determining creditors' rights in bankruptcy). So, the consignor bears a direct risk of a default by the buyer after the consignment agent conveys the goods.

By contrast, the contract here expressly shifted "all default risk of any purchaser" to Izguerra, the alleged consignee. As discussed, the contract required Izguerra to pay the full purchase price for the avocados to Izguerra even if the third-party buyer defaulted or ended up paying much less for the goods. Izguerra had to make up any deficits by reducing its own commission from the eventual sale and, if even that was not enough, reduce its profits from future sales. Produce Pay also had the right to demand payment from Izguerra for any outstanding deficits.

Moreover, unlike an ordinary seller of goods, Produce Pay never seems to have had any direct risk for the avocados in the first place. Both the complaint itself and the contract show that Izguerra took possession of the avocados directly from the growers. The contract indicates that Produce Pay did not even take legal ownership of the avocados until *after* Izguerra had already accepted them for resale. The complaint itself admits that the growers sent an invoice directly Izguerra to establish the value of the avocados before Produce Pay sent its own invoice for the same amount.

This arrangement bears striking similarities to a typical home mortgage, which is a classic secured loan. In a mortgage, banks typically take only a security interest in the home, which may be in the form of a bare legal title depending on the jurisdiction, rather than taking the riskier route of buying a home outright and then attempting to resell it. *See, e.g.*, 59 C.J.S. *Mortgages* § 241 (West 2021). Likewise, Produce Pay never had more than a bare legal title to the avocados. Instead, Produce Pay mainly played a

financing role here. The arrangement allows Produce Pay to make immediate payments to the growers while Izguerra was charged interest for any delays in repayment. That is consistent with solving a common problem in the agricultural supply chain, namely that growers may have difficulty trusting the credit of their buyers. As *Tanimura* recognized, growers frequently sell their wares on credit. *See* 883 F.3d at 802–03. If their buyers fail to resell the produce at a profit, there may be no funds available to pay back the growers. As a result, unless buyers seeking to re-sell agricultural commodities can assure the growers that they are going to get paid, the growers may be unwilling to strike a deal.

The business terms supplied by Produce Pay provide a financing solution to this dilemma, effectively providing Izguerra with credit to purchase avocados for resale by simultaneously promising the growers an advance on the sale proceeds. As explained, however, Produce Pay assumes no legal risk in the event that the proceeds are insufficient, shifting all of this risk to Izguerra. The only risk it faces is one that is familiar to lenders everywhere: the risk that the debtor (here, Izguerra) will default on its payment obligations. Though Produce Pay is free to seek other remedies for Izguerra's default—including pursuing its the breach-of-contract and tort claims asserted in its complaint—PACA is not the correct instrument to recover its investment.

## B.

The majority resists the conclusion that the transaction here was a loan rather than a sale in three ways, none of which is persuasive. First, the majority contends that *Tanimura*'s transfer-of-risk test is inapplicable. As

previously explained, that is not accurate.  *See* Parts I.B & I.C, *supra*.

Second, the majority says that the complaint "alleges facts that *resemble* a consignment transaction."  (Emphasis added.)  In addition to discussing the parties' payment terms, the majority notes that Produce Pay "alleges that it sold approximately 20 tons of avocados to Izguerra through its online platform for Izguerra 'to sell on consignment.'"  At the threshold, we acknowledged in *Tanimura* that the transaction before us there had "features both of a sale and of a loan," remanding to the district court to apply the transfer-of-risk test in the first instance and decide which characterization made more sense.  883 F.3d at 813. Consequently, the question is not whether the transaction here "resemble[s]" a consignment sale in some respects, but rather whether its sale-like features or its loan-like features predominate.  *Tanimura* specifically instructs that the "labels" the parties put on a transaction are not determinative.[4]  *Id.*  As a result, the fact that the parties' agreement calls the transaction a consignment sale, and the fact that Produce Pay is referred to as "a bona fide purchaser," are of no moment.

Finally, relying on facts taken from a law review article and un-pleaded assertions by amici, the majority says that it is important to move agricultural commodities quickly due to the perishable nature of the goods, and concludes that the fact that Produce Pay never had physical possession of the avocados is of minimal relevance.  What the majority leaves

---

[4] But to the extent that labels do matter, it is worth noting that even though Produce Pay calls the overall transaction a consignment sale, the parties' contract also twice describes Produce Pay's services as "alternative financing."

unexplained is how Produce Pay could be a "seller" of goods that it never possessed at any point in the transaction and only took legal title to *after* possession had passed to the purported buyer, Izguerra.

The Sixth Circuit's unpublished decision in *In re Spiech Farms, LLC*, 840 F. App'x 861 (6th Cir. 2021), which involved another loan by Produce Pay that was structured to look like a sale, is instructive on this point. Contrary to the majority's assertions, the transaction in *Spiech* was remarkably similar to the transaction here.

In *Spiech*—which was a bankruptcy case—the debtor listed produce for "sale" on Produce Pay's online platform, after which Produce Pay could "buy" the produce for half its value and assume legal ownership of it. *Id.* at 864. In reality, this was a short-term loan rather than a purchase, as the debtor had already delivered the produce to its customers by the time it notified Produce Pay that the produce was "for sale." *Id.* The "expectation" was that the debtor would repay Produce Pay after it received payments from its customers, but, as in this case, the debtor had to repay Produce Pay regardless, reducing its own profits as necessary. *Id.*

The Sixth Circuit held that this arrangement was a loan because Produce Pay had in effect shifted all the risk of the transaction to the debtor, *see id.* at 866–87, and because Produce Pay could not have sold something that it never really owned, *see id.* at 866. As in this case, Produce Pay never took possession of the produce and only learned which goods had been sold after the buyer—i.e., the debtor's customers in *Spiech*, and Izguerra here—notified Produce Pay of a delivery in the online platform. *See id.* Consequently, Produce Pay could not have been the true seller or supplier of the produce. *Id.* (citing Uniform Commercial Code § 204-1(1), (3)). So, too, here: "the

Agreement did not explicitly identify what produce would be sold, and Produce Pay only learned what produce was 'for sale' after it was registered on its platform;" "by the time Produce Pay 'bought' the produce [to 'sell' to Izguerra], it was already delivered to [Izguerra];" and "Produce Pay did not receive a document of title until it was too late—after [Izguerra] possessed the produce." *Id.*   In both cases, Produce Pay never bore any real risk for the produce, either before or after it changed hands.

The majority's efforts to distinguish *Speich* factually are unpersuasive.  For example, the majority avers that, unlike in the *Speich* transaction, there is nothing here that "could be construed as interest, rather than as a late payment penalty." To start, this creates a false dichotomy: interest often functions as a late-payment penalty for a loan (interest on credit-card debt is a classic example).  More to the point, Produce Pay's complaint expressly alleges that Izguerra was on the hook for "interest . . . at the rate of 1.5% per month (18% per annum), or the maximum rate allowable under applicable law, until such time as full payment is received" on any "past-due" amounts.  This portion of the complaint cites to an attached invoice that states this same interest rate, lists Izguerra as the "[d]ebtor," and calculates "[a]ccrued [i]nterest" as of the [p]ast [d]ue" date.  The majority's other purported points of distinction fail because they rely on irrelevant differences (for example, that this case involves an agreement with a grower rather than a distributor) and question-begging statements (asserting in a conclusory fashion that Produce Pay was functioning as a lender in *Speich*, but not here, and that the transactions are "clearly different").

One final observation about *Speich* is in order.  Whatever else can be said about the transaction at issue in that case, it

was not a factoring transaction, and the majority does not claim that it was.  And while the majority accuses me of trying to "pound a square peg into a round hole" by applying *Tanimura*'s transfer-of-risk test to a non-factoring transaction, the Sixth Circuit did precisely that in *Speich*. *See* 840 Fed. App'x at 867 (citing, *inter alia*, *Tanimura*, 883 F.3d at 808).  In fact, it expressly rejected a similar argument to narrow the scope of *Tanimura* and similar decisions by our sister circuits, observing that in all these cases, the ultimate purpose of the transfer-of-risk test was "to resolve the parties' contentions regarding their contractual relationship."  *Id.* at 867 n.2.  As in *Speich*, "Produce Pay does not convincingly explain why [we] should abstain from engaging in such analysis" here.  *Id.*

## III.

Before concluding, I briefly address Produce Pay's and amici's policy argument that a ruling in Izguerra's favor would effectively remove all consignment sales from PACA's protections, defeating the purpose of PACA and disrupting global supply chains.  That is pure hyperbole.  For one, Produce Pay remains perfectly free to pursue its breach-of-contract and tort claims against Izguerra in state court, even if it can no longer make a federal case out of Izguerra's outstanding invoices.[5]   Additionally, neither the approach taken in my dissent nor the district court's approach treat consignment sales as falling outside PACA's protections; the foregoing analysis properly focuses on the risk-shifting provisions of the parties' agreement in this specific

---

[5] Produce Pay's complaint invokes federal question jurisdiction. The apparent amount in controversy ($63,786.56) is below the $75,000 threshold for diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).

transaction, and ensures that true consignment sales are protected by PACA.

More importantly, PACA's basic purpose would not be undermined by holding that Produce Pay is outside the statute's protections here.  There is no dispute that the original growers here are sellers of produce, and therefore beneficiaries of a PACA trust.  Consequently, the primary result of holding that Produce Pay is not a seller or supplier would be that the original growers would have a superior claim to proceeds from the avocados in the event that Izguerra files for bankruptcy.  That is fully consistent with Congress's intent to protect produce growers from claims by lenders.  *See* 7 U.S.C. § 499e(c)(1) & (2).

## IV.

In sum, the district court properly looked beyond the labels the parties assigned to their transaction and concluded that Produce Pay has failed to plead that it was an "unpaid supplier[] or seller[]" of produce protected by PACA. 7 U.S.C.  § 499e(c)(2).    That  conclusion  should  be unsurprising.  Produce Pay advertises itself as "the fastest-growing provider of capital, market insights, and trade protection for growers of fresh produce."[6]  It says that it provides alternative financing "solutions" to produce growers—including "financing . . . for consignment sales"—that do away with the "need to pledge land as

---

[6] *About Us*, Produce Pay, https://producepay.com/about-us/.  The existence of statements made on Produce Pay's website is a proper subject of judicial notice.  *See, e.g.*, *Arroyo v. AJU Hotel Silicon Valley LLC*, No. 20-CV-08218-JSW, 2021 WL 2350813, at *2 (N.D. Cal. Mar. 16, 2021).

collateral."[7]  For example, Produce Pay offers "[p]re-harvest grower financing without using land as collateral, with funding in under 2 weeks."[8]  "Unlike a traditional bank loan," Produce Pay says on its website, "our pre-harvest financing is specifically designed for fresh produce growers."[9]  Produce Pay also offers so-called "Quick-Pay Financing [f]or perishable fruits and vegetables" whereby produce growers received "up to 96% of their shipment's value 24 HOURS after their buyer confirms" receipt of any produce sold.[10]  This is said to allow growers to "[f]ocus on selling, not financing[:] We pay the grower, you pay us once the product sells."[11]

It is apparent from the complaint and attached exhibits that Produce Pay was playing a financing role here.  Because the majority's contrary conclusion results only from its refusal to properly apply *Tanimura* and scrutinize the terms of the parties' business dealings, I would affirm the district court.  I respectfully dissent.

---

[7] *Financing*, Produce Pay, https://producepay.com/financing/.

[8] *Pre-Season Financing*, Produce Pay, https://producepay.com/pre-season-financing/.

[9] *Id.*

[10] *Quick-Pay Financing*, Produce Pay, https://producepay.com/quick-pay-financing/.

[11] *Id.*